UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
DESIREE VAUGHAN *individually and*
*on behalf of all others similarly situated*,

                       Plaintiff,

              - against -

MORTGAGE SOURCE LLC
and MICHAEL J. LEDERMAN,

                      Defendants.
-----------------------------------------------------------X

**ORDER**

CV 08-4737 (LDW) (AKT)

**A. KATHLEEN TOMLINSON, Magistrate Judge:**

**I.    PRELIMINARY STATEMENT**

       Plaintiff Desiree Vaughan ("Vaughan" or "Plaintiff") brings this action on behalf of herself and others similarly situated, seeking unpaid minimum wage and overtime compensation from Defendants Mortgage Source LLC ("Mortgage Source") and company President, Michael J. Lederman ("Lederman") (together, "Defendants"), pursuant to the Fair Labor Standards Act of 1938, as amended ("FLSA"), 29 U.S.C. §§ 201 *et seq.*, the New York Wage and Hour Law, New York Labor Law Articles 6 and 19 and the New York Codes Rules and Regulations §§ 138-2.1 *et seq.* ("New York Labor Articles"). Plaintiff now moves for (1) conditional certification as an FLSA collective action pursuant to 29 U.S.C. § 216(b) ("Section 216(b)"); (2) Court authorization of a proposed notice to all individuals who are similarly situated in this potential collective action; and (3) Defendants' production of a computer-readable data file containing the names, addresses, and telephone numbers of certain of Defendants' former and current employees (*i.e.*, potential opt-in members). For the reasons set forth below, Plaintiff's motion for

(1) conditional certification under Section 216(b) of the FLSA, (2) Court-authorized notice, and (3) Defendants' production of the requested data file is GRANTED. The proposed notice submitted under cover letter dated May 19, 2009 [DE 36] is approved to the extent set forth below.

## II.  BACKGROUND

### A.  Alleged Facts

Plaintiff Desiree Vaughan was formerly employed as a loan officer by Defendants from May 2006 to September 2006 and worked at Defendants' main office located in Garden City, New York, and its previous location in Great Neck, New York. Complaint ("Compl.") [DE 1], ¶ 5; Pl.'s Mem. at 2; Pl.'s Ex. C, ¶¶ 2, 3. Defendant Mortgage Source provides mortgage banking services to consumers in New York State. Compl., ¶ 8. Defendant Lederman is the President of Mortgage Source and has held that position at all times relevant to the allegations set forth in the Complaint. *Id.*, ¶ 10. Lederman exercised operational control as well as control over significant business functions of Mortgage Source, determined employee compensation, made hiring decisions, and acted on behalf of and in the interest of the company in devising, directing, implementing, and supervising the challenged wage and hour practices and policies relating to loan officers. *Id.*

Plaintiff alleges that Defendants managed the loan officers' employment, including the amount of overtime worked, and that Defendants dictated, controlled and ratified the wage and hour and all related employee compensation policies of Mortgage Source. *Id.*, ¶ 18. Specifically, Plaintiff maintains that "Defendants uniformly administered and enforced their sales policies to all loan officers through a training program, weekly meetings, supervision, and its production

goals and quotas." Pl.'s Mem. at 3; Pl.'s Exs. C-N, ¶¶ 4, 9. Furthermore, according to Plaintiff, Defendants followed uniform policies in connection with the loan officers, including mandating that loan officers satisfy daily, weekly and monthly production goals and quotas and requiring them to work evenings, early mornings and weekends, for the purpose of selling more loans for Defendants. Pl.'s Mem. at 3; Pl.'s Exs. C-N, ¶¶ 4-7, 9.

With respect to the alleged pay plan and common scheme, Plaintiff contends that pursuant to Mortgage Source's uniform policies, Plaintiff and all similarly situated loan officers were paid commissions only -- *i.e.*, they did not receive a guaranteed salary (which, according to Plaintiff, would have been $455 per week for a 40-hour work week) or an hourly rate for the hours they worked. Plaintiff further asserts that, "[a]s a result of Defendants' pay plan, time requirements and production goals, loan officers regularly worked in excess of forty (40) hours per week without any overtime pay." Pl.'s Mem. at 4; Compl., ¶¶ 19-22. Moreover, according to Plaintiff, "Defendants furthered their common scheme by failing to keep any records of the time worked by their loan officers even though they were required to do so under the FLSA." Pl.'s Mem. at 4 (citing 29 C.F.R. § 516.2); Pl.'s Exs. C-N, ¶ 10; *see also* Compl., ¶ 27 ("Neither Plaintiff nor the similarly situated loan officers have been required to record their time worked, and Defendants failed to maintain accurate time records as required by the FLSA and the New York Labor Articles.").

Regarding the jobs performed by loan officers at Mortgage Source, Plaintiff maintains that all loan officers had the same job titles, compensation plans, job descriptions and job requirements. Compl., ¶¶ 12-32; Pl.'s Mem. at 2. The loan officers' primary duty was "to sell residential mortgage loans." Compl., ¶ 15. In particular, loan officers sold "home loans by

3

calling prospective customers from Defendants' office over the telephone, inputting their information into the Mortgage Source computer database and closing a deal." Pl.'s Exs. C-N, ¶ 5.

## B. Procedural History

Plaintiff commenced this action by filing a Complaint on November 21, 2008 [DE 1]. The parties filed their briefs in support of and in opposition to the instant motion for conditional certification as an FLSA collective action [DE 32-35] on May 13, 2009. On May 19, 2009, the parties filed a joint letter and proposed Notice form, stating that they

> agree on the attached notice if the Court grants Plaintiffs' Motion for Conditional Certification for both overtime and minimum wage violations. If the Court does not grant the Plaintiffs' motion as to their overtime claims only, the Defendants request that references to overtime in the proposed notice be stricken and that notice be issued only as to Plaintiffs' minimum wage claim. The parties do not dispute that a collective action should proceed on Plaintiffs' minimum wage claims.

*See* DE 36. In other words, the parties have agreed that the instant motion for conditional certification should be granted as to Plaintiff's minimum wage claim and have agreed to a proposed notice for such claim. The only issue here, therefore, is whether conditional certification should be granted with respect to Plaintiff's claim for overtime wages. In the event the Court grants Plaintiff's motion for overtime wages, then Defendants agree to the proposed Notice for that claim as well.

On June 23, and November 16, 2009, respectively, Plaintiff sought leave to supplement her motion for the sole purpose of referring the Court to two decisions which, according to Plaintiff, provided "directly on-point authority." *See* DE 37, 38. Defendants did not object to Plaintiff's request for leave to supplement and, in any event, the Court had reviewed the

appended decisions on its own. In both decisions submitted by Plaintiff -- *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209 (E.D.N.Y. 2009) and *Sexton v. Franklin First Financial, Ltd.*, No. 08-CV-4950, 2009 WL 1706535 (E.D.N.Y. Jun. 16, 2009) -- Judge Bianco granted a motion for conditional certification as an FLSA collective action pursuant to Section 216(b), based upon factual circumstances similar to the instant case.[1] Judge Bianco's decisions in *Bifulco* and *Sexton* are directly applicable to this motion and the Court therefore relies upon such decisions here. In addition, the Court has extensively considered the parties' submissions and the applicable case law.

## III. DISCUSSION

### A. Conditional Certification

#### 1. *Legal Standard*

The FLSA provides, in pertinent part:

> Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages. . . . An action to recover the liability prescribed in either of the preceding sentences may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). Section 216(b) provides an employee with a private right of action to recover overtime compensation and/or minimum wages. *Id*. (cited in *Bifulco v. Mortgage Zone,*

---

[1] Counsel for Plaintiff in the instant case also served as counsel for the respective Plaintiffs in *Bifulco* and *Sexton*.

*Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y. 2009) (citations omitted)). "Although the FLSA does not contain a class certification requirement, such orders are often referred to in terms of 'certifying a class.'" *Bifulco*, 262 F.R.D. at 212 (citations omitted).

Courts within the Second Circuit apply a two-step analysis to determine whether an action should be certified as an FLSA collective action. First, the court determines whether the proposed class members are "similarly situated." *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 480 (E.D.N.Y. 2001). If the court decides in the affirmative, then the proposed class members must consent in writing to be bound by the result of the suit, or "opt-in." *Id.* (citing 29 U.S.C. § 216(b)) (additional citations omitted). The second step, which typically occurs after the completion of discovery, requires the court to make factual findings whether the class members are "actually 'similarly situated.'" *Bifulco*, 262 F.R.D. at 212. "At that juncture, the court examines the evidentiary record to determine whether the 'opt-in' plaintiffs are, in fact, similarly situated to the named plaintiff." *Id.* (citations omitted).

The instant decision concerns only the first step -- whether the proposed opt-in members are "similarly situated" such that conditional certification should be granted. At this stage, "the evidentiary standard is lenient," *Rubery v. Buth-Na-Bodhaige, Inc.*, 569 F. Supp. 2d 334, 336 (W.D.N.Y. 2008), and plaintiff "need only make 'a modest factual showing to demonstrate that [she] and potential plaintiffs together were victims of a common policy or plan that violated the law.'" *Doucoure v. Matlyn Fodd, Inc.*, 554 F. Supp. 2d 369, 372 (E.D.N.Y. 2008) (quoting *Hoffmann v. Sbarro*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). "In making this showing, 'nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan' is required." *Sexton v. Franklin First Fin., Ltd.*, No. 08-CV-

4950, 2009 WL 1706535, at *3 (E.D.N.Y. Jun. 16, 2009) (quoting *Scholtisek v. Eldre Corp.*, 229 F.R.D. 381, 387 (W.D.N.Y. 2005)). This determination is typically "based on the pleadings, affidavits and declarations[.]" *Sexton*, 2009 WL 1706535, at *3 (quoting *Hens v. ClientLogic Operating Corp.,* No. 05 Civ. 381S, 2006 WL 2795620, at *3 (W.D.N.Y. Sept. 26, 2006)); *see also Hallissey v. Am. On-line, Inc.,* No. 99 Civ. 3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008) ("Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members."). Significantly, the burden of proof here "is not a stringent one, and the Court need only reach a preliminary determination that potential class members are 'similarly situated.'" *Doucoure*, 554 F. Supp. 2d at 372.

In addition, courts have repeatedly stated that Section 216(b)'s "similarly situated" requirement is "considerably less stringent" than the requirements for class certification under Rule 23. *Rodolico*, 199 F.R.D. at 481 (citing cases). "Under the FLSA, potential plaintiffs are required to 'opt-in' 'to be bound by the judgment (and to benefit from it).'" *Sexton*, 2009 WL 1706535, at *4 (quoting *Hoffmann*, 982 F. Supp. at 260); *see also Rodolico*, 199 F.R.D. at 482; *Doucoure*, 554 F. Supp. 2d at 372 ("That this burden is significantly less exacting that the matters that must be demonstrated to sustain certification of a class under [Rule] 23 -- numerosity, commonality, typicality, and adequate representation -- makes sense.").

2.  *Application*

In the instant case, Plaintiff has alleged that she and the potential opt-in plaintiffs, who also worked as loan officers at Mortgage Source's Great Neck and/or Garden City offices, were subject to uniform policies of working more than 40 hours per week without receiving overtime

or minimum wage, in violation of the FLSA. Specifically, Plaintiff alleges that pursuant to Defendants' compensation and human resource policies, "which applied and were expected to be followed by all loan officers[,]" she and other similarly situated loan officers were paid on a commission basis only, "which meant that [they were] paid only if and when [they] sold a loan. If [they] did not sell a home loan during a pay period, [they were] not paid anything, including minimum wage. In fact, there were weeks when [they were] not paid anything because [they] did not close a loan." Pl.'s Exs. C-N, ¶ 6. Plaintiff also alleges that she, the other opt-in plaintiffs, and the potential opt-in plaintiffs had similar job duties, including the primary duty of selling home loans. *Id*., ¶ 4. Plaintiff further contends that Defendants did not record her time or the time worked by other loan officers, and that Defendants "did not have a time keeping system for its loan officers." *Id*., ¶ 10. Plaintiff further avers that during the term of her employment at Mortgage Source, "Defendants did not post any notice informing [the employees] of [their] rights to minimum wages and overtime pay." *Id*., ¶ 11.

In her Affidavit (Pl.'s Ex. C), named Plaintiff Desiree Vaughan attests that while employed by Mortgage Source, she "regularly worked in excess of 40 hours per week and often worked as many as 60 hours per week selling home loans." Pl.'s Ex. C, ¶ 7. Vaughan further states that she worked with approximately 30 other loan officers whom she personally observed on a daily basis, who likewise "regularly worked in excess of 40 hours per week and were not paid overtime[,]" and were paid on a commission-only basis. *Id*., ¶ 9. The allegations set forth in the Complaint, the motion for certification and Plaintiff Vaughan's affidavit are supported by the consent forms filed by 16 additional former loan officers, alleging that they were not paid minimum wage and did not receive overtime compensation, despite having worked in excess of

40 hours per week on at least one occasion. Pl.'s Ex. A (16 consent forms). Plaintiff's position is also supported by the affidavits submitted by 12 other loan officers (all of whom also signed consent forms), attesting that (1) they regularly worked over 40 hours per week and often worked between 60 and 75 hours, and (2) they worked with between 20 and 100 other loan officers whom they observed on a daily basis, who were also paid on a commission-only basis, regularly worked more than 40 hours per week, and were not paid overtime. *See* Exs. C-F, H, J-N ¶¶ 7-9.

Plaintiff and the opt-in plaintiffs assert that Defendants maintained the same compensation plan for all loan officers -- commission only -- which meant that loan officers were only paid if they made a sale. Pl.'s Mem. at 4; Pl.'s Exs. C-N, ¶ 6. According to Plaintiff, "by failing to pay its loan officers guaranteed compensation of at least $455 per week," Defendants cannot satisfy the salary basis test for exemption from the FLSA. Pl.'s Mem. at 4 (citing 29 C.F.R. § 541, *et seq.*). In other words, Plaintiff argues, the loan officers were not exempt employees under the FLSA, yet Defendants nonetheless did not pay them overtime. *See* Pl.'s Exs. C-N, ¶¶ 7-9.

Based upon the pleadings, affidavits and evidentiary showing made by Plaintiff and opt-in plaintiffs, the Court finds that Plaintiff has satisfied her burden at the initial stage of this FLSA collective action inquiry. Plaintiff has indeed set forth a factual basis -- more than the "modest showing" required -- to conclude that loan officers at Mortgage Source were subject to a common policy of being denied minimum wage and overtime pay by Defendants, in violation of the FLSA. *See Sexton*, 2009 WL 1706535, at *5 (quoting *Hens*, 2006 WL 2795620, at *3). The Court's finding is based upon Plaintiff's specific allegations that she was denied minimum wage and overtime pay pursuant to Defendants' policies, and that such policies applied to all loan

9

officers employed by Mortgage Source. Plaintiff's showing here satisfies the "modest factual showing" required to establish, at this early stage, that the potential plaintiffs are "similarly situated." *See Sexton*, 2009 WL 1706535, at *5. The Court has further based its conclusion upon the "substantial allegations" set forth by the potential opt-in plaintiffs regarding Defendants' failure to pay the loan officers minimum wage and overtime. *Id.* (quoting *Scholtisek*, 229 F.R.D. at 387); *Bifulco*, 262 F.R.D. at 213-14; citing *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 267 (E.D.N.Y. 2005); *Lynch v. United Servs. Auto Ass'n*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (burden of proof at the notice stage is "very low"); *Trinidad v. Breakaway Courier Sys.*, No. 05 Civ. 4116, 2007 WL 103073, at *2 (S.D.N.Y. Jan. 12, 2007) ("Plaintiffs need only provide some factual basis from which the court can determine if similarly situated plaintiffs exist.") (internal quotation marks and citations omitted).

In opposition to Plaintiff's motion for conditional certification, Defendants argue that they did not have a common policy requiring their employees to work more than 40 hours per week and, in fact, most loan officer work less than that.[2] *See* Defs.' Mem. at 4. Specifically, Defendants assert that "[l]oan officers schedules['] are very flexible, set by the loan officers themselves[,]" and as a result of Mortgage Source's "generous policy of allowing all loan officers to schedule their own general hours, they usually do not work more than thirty five hours per week. . . ." Defs.' Mem. at 2. In support of their position, Defendants submitted 15 affidavits --

---

[2] As noted above, Defendants do not oppose Plaintiff's motion for conditional certification as to the minimum wage claim. Defendants state that while they "do not concede that there was any violation with respect to minimum wage, Defendants did maintain a policy wherein they did not compensate their employees on an hourly basis, thus there is a common policy in place." Defs.' Mem. at 1. Defendants further concede that they "did not maintain a time keeping schedule in order to ensure that their employees were being compensated for overtime. . . ." *Id.* at 3.

10 of which are from loan officers who currently work at Mortgage Source and who attest that the loan officers begin work at approximately 10 a.m. and work until approximately 6 or 7 p.m.; that they take lunch breaks of up to 1½ hours and frequent smoking breaks; that they have flexible schedules; and that they have never worked over 40 hours per week and do not believe other loan officers have done so either. *See* Defs.' Exs. A-I, O. The other affidavits are from (1) a former Mortgage Source Assistant Vice President who estimates that most loan officers who worked under him "worked less than 30 hours in a work week" and that no loan officer "ever worked 60 or 70 hours in a week" (Defs.' Ex. J, ¶¶ 14, 15); (2) the current Chief Information Officer, who attests that most loan officers "surf the internet for about three or four hours a day," and do work-related activity while in the office for about 22 hours per week (Defs.' Ex. K, ¶ 6); (3) the current Manager of Human Resources, who states that most loan officers work less than 35 hours per week (Defs.' Ex. L, ¶ 14); (4) a former Vice President responsible for sales and operations, who states that most loan officers work about 30 hours per week, possibly 33 hours if they work on Saturdays (Defs.' Ex. M, ¶ 13); and (5) a former loan officer who attests that he worked about 40 hours per week (Defs.' Ex. N, ¶ 9).

Defendants' argument in opposition to the instant motion is, in effect, that loan officers at Mortgage Source simply did not and do not work more than 40 hours per week. The Court finds significant the following statement by Mortgage Source's Human Resources Manager regarding the "flexible work schedules [provided] to all loan officers" (Defs.' Ex. L, ¶ 2):

> We permitted this environment because loan officers and management were well aware that each loan officer would not be performing services or work for more than forty hours per week. If we believed they would be working over forty hours in a week, we would have monitored their breaks and time spent not working;

11

> however it was widely understood that they would not be working more than forty hours per week.

Defs.' Ex. L, ¶ 11. In other words, according to Defendants, "while Plaintiffs claim that all employees were due overtime, Defendants did not have a common policy that any loan officers should work in excess of forty hours and most, if not all, were not even in the office for forty hours a week." Defs.' Mem. at 4. Defendants further contend that without a common policy, "Plaintiffs have not established that the class was required to work in excess of forty hours[,]" and that the affidavits submitted by Defendants show that loan officers at Mortgage Source "are not similarly situated to one another when it comes to their schedules." Defs.' Mem. at 7, 9.

At the outset, the Court notes that the affidavits submitted by Defendants essentially allege that not every loan officer worked overtime. However, Plaintiff does not allege that every loan officer worked more than 40 hours per week, but rather, that loan officers who did work more than 40 hours per week were not properly compensated with overtime pay. Notably, one of the affidavits submitted by Defendants states that most loan officers usually work between 35 and 38 hours per week, and "[p]eople used to stay late but they would come in later to make up for it." Defs.' Ex. H, ¶ 8. That statement raises a question why people would have to "make up for" any time if there were no set hours. Additionally, courts may assign the weight they think appropriate to affidavits from current employees because of "the risk of bias and coercion." *Morden v. T-Mobile USA, Inc.*, No. C05-2112, 2006 WL 2620320, at *3 (W.D. Wash. Sept. 12, 2006) (citations omitted).

The Court further notes Defendants' interpretation of the "similarly situated" requirement. The issue here is not whether Plaintiff and other loan officers had similar schedules, but rather whether they were subjected to a common policy to deprive them of

overtime pay when they worked more than 40 hours per week. As discussed above, the Court has concluded that Plaintiff's evidentiary showing more than meets the "modest showing" test applied at this initial stage of conditional certification. Moreover, following the completion of discovery in this case, the Court will revisit this issue to determine whether, based upon the record as a whole, members of the conditional class are, in fact, similarly situated. *See Bifulco*, 262 F.R.D. at 212 (citing *Hens*, 2006 WL 2795620, at *4). If, at that point, the Court determines that the members are not similarly situated under the law, then "the court will decertify the class, the claims of the opt-in plaintiffs will be dismissed without prejudice, and the class representatives may proceed to trial on their individual claims." *Bifulco*, 262 F.R.D. at 212 (quoting *Rubery*, 569 F. Supp. 2d at 336).

Defendants' argument -- that Plaintiff has not shown that she and other loan officers were subjected to a uniform policy of depriving loan officers of overtime pay because loan officers did not work more than 40 hours per week -- is, in effect, an attack on the credibility of Plaintiff and the opt-in plaintiffs. Attacks on credibility, however, are not properly addressed in the context of a motion for conditional certification. *See Sexton*, 2009 WL 1706535, at *6; *Bifulco*, 262 F.R.D. at 214. Moreover, as previously noted, Plaintiff and 16 additional opt-in plaintiffs submitted affidavits in which they attested that they regularly worked more than 40 hours per week as loan officers at Mortgage Source, and worked evenings, early morning and weekends without being compensated for such overtime work. Pl.'s Exs. B-N, ¶ 7; Pl.'s Mem. at 9-11. In light of these affidavits, which are consistent with Plaintiff's allegations in the case, the Court finds that there exists a sufficient factual basis for granting Plaintiff's motion at this stage. *See Bifulco*, 262 F.R.D. at 214; *compare Rubery*, 569 F. Supp. 2d at 337 ("[P]laintiff has met her burden to

13

demonstrate, by producing affidavits and time records from other Shop Managers which are indicative of a common policy or plan with respect to the duties and supervisory responsibilities of Shop Managers.") *with Prizmic v. Armour, Inc.,* No. 05 Civ. 2503, 2006 WL 1662614, at *1 (E.D.N.Y. June 12, 2006) (denying conditional class certification where "[p]laintiff [had] not submitted any affidavit or documentation in support of the instant motion"); *see generally Sobczak v. AWL Indus., Inc.*, 540 F. Supp. 2d 354, 361 (E.D.N.Y. 2007) ("Courts regularly grant motions for approval of a collective action notice based upon employee affidavits setting forth a defendant's plan or scheme to not pay overtime compensation and identifying by name similarly situated employees.") (internal quotations and citation omitted); *Summa v. Hofstra Univ.*, No. 07 Civ. 3307, 2008 WL 3852160, at *2 (E.D.N.Y. Aug. 14, 2008) ("At the initial assessment stage, before discovery is completed, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits or make credibility determinations.") (citation omitted).

Moreover, the cases relied upon by Defendants in opposing the instant motion are largely inapposite. First, Defendants rely upon *Mendoza v. Casa de Cambio Delgado, Inc.*, 07 CV 2579, 2008 WL 938584 (S.D.N.Y. Apr. 7, 2008), to show that the "boilerplate" and "virtually identical" affidavits submitted by Plaintiff and the opt-in plaintiffs fail to show the necessary nexus between themselves and other employees. *See* Defs.' Mem. at 5-6. In *Mendoza*, however, the court stated that "[t]he principal defect in these affidavits for collective certification is that not one Plaintiff affidavit purports a factual nexus with other putative employees." *Mendoza*, 2008 WL 938584, at *2. In the instant case, however, Plaintiff Vaughan's affidavit supports a factual nexus with the opt-in plaintiffs as they all attest they were loan officers with the same job duties, working more than 40 hours per week pursuant to Defendants' policies, and were

deprived of overtime compensation.  *See Sexton*, 2009 WL 1706535, at *6.  Moreover, in *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209 (E.D.N.Y. 2009) -- to which this Court has frequently referred throughout this opinion based upon the similar factual circumstances -- the Court granted conditional certification for a potential class of loan officers suing their former employer, a mortgage bank, and its officers where Defendants argued that "each of the declarations submitted [is] identical in form and accusation."  There, Judge Bianco found that "Defendant's affidavit appears to suggest that, in fact, the plaintiffs and opt-in plaintiffs are similarly situated." *Bifulco*, 262 F.R.D. at 215.  The Court finds that the same analysis applies here, and that the similarities between the affidavits submitted by Plaintiff and the opt-in plaintiffs further indicates that they are "similarly situated."  Defendants' reliance upon a later decision in *Mendoza v. Casa de Cambio Delgado, Inc.*, 07 CV 2579, 2008 WL 3399067 (S.D.N.Y. Aug. 12, 2008), which Defendants attempt to distinguish from the instant case (Defs.' Mem. at 7-8), is also misplaced because there, the parties had already engaged in preliminary discovery, including several depositions and production of numerous documents.  *Mendoza*, 2008 WL 3399067 at *1, n.3.

In sum, Plaintiff has demonstrated a sufficient "factual nexus between [their] situation and the situation of other current and former" employees, *Sexton*, 2009 WL 1706535, at *9; *Bifulco*, 262 F.R.D. at 215, who were potentially denied minimum and overtime wages.  The pleadings and affidavits presented here are sufficient at this stage of the litigation for conditional certification of a collective action pursuant to Section 216(b) of the FLSA.  *Id*.  Accordingly, Plaintiff's motion for conditional certification is GRANTED.

### B. Form Of Notice

Plaintiff also moves for an Order "authorizing notice by U.S. first class mail to all similarly situated persons employed by Defendant as loan officers or other similarly titled positions from November 21, 2006 to the present to inform them of their right to opt-in to this lawsuit. Pl.'s Notice of Motion at 1. In other words, Plaintiff seeks court authorization to disseminate the proposed notice of pendency to putative collective action members, beginning three years from the commencement of this lawsuit. *See Sexton*, 2009 WL 1706535, at *9; *Bifulco*, 262 F.R.D. at 216. Plaintiff estimates that "there are hundreds of additional similarly situated current and former loan officers who worked for Defendants during the statutory period and should be given notice and opportunity to opt-in to the lawsuit." Pl.'s Mem. at 11; Pl.'s Exs. C-N, ¶ 9.

In a joint letter submitted shortly after the filing of the instant motion, the parties attached a proposed notice to which they agreed "if the Court grants Plaintiff's Motion for Conditional Certification for both overtime and minimum wage violations." *See* DE 36. Since the Court has granted Plaintiff's motion with respect to both the minimum wage and overtime claims, the Court also approves the proposed notice with the modifications set forth below. *See Rubery*, 569 F. Supp. 2d at 336 ("Because a collective action requires written consent from the opt-in plaintiffs, 'it lies within the discretion of a district court to begin its involvement early, at the point of the initial notice,' in order to ensure that the drafting and distribution of the notice is 'timely, accurate and informative.'") (quoting *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 171-72 (1989)).

First, the time period beginning November 21, 2005 and running to the present is the appropriate time frame for opt-in plaintiffs because the FLSA has a three-year statute of limitations period for willful violations, which Plaintiff alleges in this case. *See Bifulco*, 262 F.R.D. at 216 (citing 29 U.S.C. § 255(a)).[3] Plaintiff filed the Complaint on November 21, 2008. Therefore, the three-year cut-off date is November 21, 2005. Moreover, because claims of the potential opt-in plaintiffs are tolled on the date that their consent forms are filed, *see* 29 U.S.C. § 256(a), November 21, 2005 is the earliest possible date that a plaintiff in this case may have been last employed by Defendants in order to have a timely claim under the FLSA. *See Sexton*, 2009 WL 1706535, at *10; *Bifulco*, 262 F.R.D. at 216.

The proposed notice shall be modified to eliminate the term "class action" to describe the lawsuit and the word "class" to describe the opt-in plaintiffs. The phrase "collective action" shall be used to describe the lawsuit at the present stage and should replace "class action," including in the heading, such that the heading may read "Notice of Collective Action Lawsuit" or "Notice of Lawsuit with Opportunity to Join." *See Bifulco*, 262 F.R.D. at 216 (ordering similar modification of proposed notice and noting that "[t]he use of the word 'class' is also misleading to a layperson and should be stricken or substituted accordingly") (citations omitted); *see also Iriarte v. Redwood Deli & Catering, Inc.*, CV-07-5062, 2008 WL 2622929, at *1 (E.D.N.Y. June 30, 2008) ("Courts have broad discretion over whether to grant certification, what discovery to

---

[3] "For an employer's actions to be willful, the employer must have 'either [known] or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA]." *Ramirez v. Rifkin*, 568 F. Supp. 2d 262, 268 (E.D.N.Y. 2008) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). Courts within the Second Circuit generally leave the question of willfulness to the trier of fact. *Ramirez*, 568 F. Supp. 2d at 268 (citations omitted).

allow, and what form of notice to provide.") (citation omitted). Accordingly, the parties' proposed notice is approved with the modifications set forth here.

C. **Production Of Contact Information For Potential Opt-Ins**

Finally, Plaintiff seeks an Order "requiring Defendants to produce a computer-readable data file containing the names, addresses and telephone numbers of such potential opt-in members so that notice may be issued[.]" Pl.'s Notice of Motion at 1. Defendants have not stated any opposition to this request. Courts within the Second Circuit typically grant this type of request when granting a motion for conditional certification of an FLSA collective action, and this Court finds Plaintiff's request to be appropriate within the context of this case. *See Sexton*, 2009 WL 1706535, at *13; *Bifulco*, 262 F.R.D. at 216; citing *Hens*, 2006 WL 2795620, at *5 (the name, last known mailing address, last known telephone number, work location, and dates of employment are "essential to identifying and notifying potential 'opt-in' plaintiffs, and should be disclosed"); *Sherrill*, 487 F. Supp. 2d at 350 ("I agree that such information is essential to identifying prospective opt-in plaintiffs."); *Chowdhury*, 2007 WL 2873929, at *2 ("When a court certifies a collective action, it may require an employer to disclose the names and addresses of potential plaintiffs."). Requiring Defendants to provide the requested information will not be "unduly burdensome or disruptive to [D]efendant's business operations." *See Sexton*, 2009 WL 1706535, at *13; *Bifulco*, 262 F.R.D. at 216 (quoting *Hallissey*, 2008 WL 465112, at *3 ("In selecting the manner of issuing the notice, this court must strike the appropriate balance in ensuring notification to the [opt-in plaintiffs] while minimizing disturbance to [defendant's] business.")). Accordingly, Defendants shall provide the requested information to Plaintiff's counsel within 21 days of this Order.

## IV.    CONCLUSION

For the reasons set forth above, Plaintiff's motion for (1) conditional certification as a collective action pursuant to Section 216(b) of the FLSA, (2) Court-authorized notice, and (3) production of contact information by Defendants for all potential opt-in plaintiffs is hereby GRANTED.

The parties shall meet and confer in a timely manner to revise the form of the proposed notice in compliance with this Order.

**SO ORDERED.**

Dated: Central Islip, New York
April 14, 2010

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge